## DUNN v. CROCKER.

ATTACHMENT—PRACTICE—WAIVER.—Where the defendant appears in attachment suits the regularity of the attachment proceedings must be tried in such suits; and if the defendant, having appeared, makes no objection by motion or answer, their regularity will be deemed admitted, and all objections waived.

ATTACHMENT—PRACTICE.—Objections to the regularity of attachment proceedings can not be first raised in collateral suits.

SAME—JUSTICES' COURTS.—The practice in attachment proceedings is the same in justices' as in the superior Courts.

UNDERTAKING IN ATTACHMENT.—As to what undertaking in attachment proceedings will operate to release the attached property and authorize a personal judgment, see the opinion at length.

ATTACHMENT—REPLEVIN—AFFIDAVIT.—In either of these forms of action, the affidavit may contain the requisites both of a complaint and affidavit, so as to dispense with any separate complaint.

PLEADING.—In an action upon an undertaking in attachment, it is necessary to set out the undertaking and show that a case arose in which it was properly taken, but the proceedings in attachment need not be fully set out or made part of the complaint. They are not the foundation of the action.

APPEAL from the *Wayne* Circuit Court.

PERKINS, J.—The record in this case shows that on the 3d of *August*, 1860, *Luther Crocker* commenced a suit before a justice of the peace against *Martin D. Bonney*, upon a note on which there was due a fraction less than 100 dollars. The suit was commenced by attachment against the personal property of *Bonney*. On the same day personal property of *Bonney* was seized by virtue of the attachment. On the 7th of *August*, 1860, *Bonney* executed and filed with the justice an undertaking, as follows:

" We, the undersigned, undertake that the property attached in said cause shall be delivered to the constable on demand,

Dunn v. Crocker.

or so much thereof as shall be required to be sold on execution to satisfy any judgment which may be rendered against him in said action; or will pay the appraised value of said property, not exceeding the amount of the judgment and costs.

"Witness our hands and seals, this 7th day of *August*, 1860.

"MARTIN D. BONNEY.
"ISAAC D. DUNN."

The justice approved the undertaking and the attached property was released. The defendant, *Bonney*, then obtained a continuance of the cause until the 18th of *August*, 1860, on which day he obtained a further continuance to the 25th of that month, on which day there was a further continuance to the 27th of the same month.

The Court refused to sustain motions to dismiss, to quash the attachment, &c.; the cause was tried, the trial resulting in a personal judgment against the defendant for the amount due on the note, &c. Execution issued on the judgment, property was not delivered to satisfy it, the property attached having been removed to the State of *Ohio* after it was released upon the undertaking filed with the justice.

No appeal was taken from any part of the judgment before the justice.

On the 5th of *April*, 1862, *Crocker* commenced suit upon the undertaking of *Bonney* and *Dunn* above set out, and in the *Wayne* Circuit Court obtained judgment upon it against *Dunn*, the defendant, served with process, from which judgment *Dunn* appealed to this Court.

The burden of the defence below, in this suit, was that the attachment proceedings were not legally conducted, and, hence, there was not a valid consideration for the instrument now sued on; and that is the question into which all others resolve themselves on the appeal to this Court. Our present

attachment law is much broader than was our former attachment law. It authorizes such a proceeding against resident defendants, in specified cases; and thus brings into existence a great number of causes where the defendant actually appears to the attachment suit. Where the defendant does so appear, the question of the regularity of the attachment proceedings must be tried in the attachment suit. *McNamara* v. *Ellis*, 14 Ind. 516.

If, in that suit, the defendant, having appeared, raises no objection to those proceedings by motion or answer, their regularity is admitted, or objection to their irregularity is waived, and such objection can not be, for the first time, brought forward in a collateral suit. And the practice, in attachment cases, is the same in justices and in superior Courts. *Bradley* v. *The Bank, &c.*, 20 Ind. 528; 2 G. & H. 150; *Hosier* v. *Eliason*, 14 Ind. 523.

That irregularities in attachment proceedings may be waived, not only by not objecting to them in Court, but also, by act of the party out of Court, is well settled. Drake on Attachment, 2d ed., §§ 193, 195. And under our statute, the wife, if acting as the agent of her husband, might undoubtedly make the waiver. 1 G. & H. p. 377, at bottom. See, also, *Casteel* v. *Casteel*, 8 Blackf. 240.

The way is now prepared for stating, and, with more conciseness, deciding the material points made in the case at bar.

The action is founded upon the written instrument executed to procure a release of the attached property.

It is not clear, from the terms of the instrument, under what section of the statute it was executed; whether under 2 G. & H. p. 143, sec. 168, or, same page, sec. 172. The first of these two sections provides for an undertaking in the nature of a delivery bond, which does not release the property from the attachment, nor from an order of sale in the judgment. It is taken and approved by the sheriff. The second

of the sections is as follows: "If the defendant, or other person in his behalf, at any time before judgment, shall execute a written undertaking to the plaintiff, with sufficient surety, to be approved by the Court, clerk or sheriff, to the effect that the defendant will appear to the action, and will perform the judgment of the Court, the attachment shall be discharged and restitution made of any property taken under it, or the proceeds thereof."

Interpreting the instrument by the circumstances of the case and the acts of the parties, we think it was intended to operate under section 172. *Bonney* was about removing the goods with his family to *Ohio.* His wife remained temporarily behind with the goods, and when they were attached waived the calling in of householders, &c. *Bonney* returned, executed the instrument in question before the justice by whom it was approved, and the goods were released and removed to *Ohio.* *Bonney* appeared personally to the suit, made defence, and judgment was rendered personally against him, without any order in the judgment for the sale of the attached property. This is the practice to be pursued under section 172. Under that section the written undertaking is a substituted security for the property, and where the attachment proceedings are sustained and judgment is rendered against the defendant, no order is made for the sale of the property, it having been released, but a suit on the undertaking is resorted to instead of the property. It is like the attachment proceedings against water craft. It is true, the written instrument is informal; but it was taken by a public officer, and bonds thus taken in proper cases, are not vitiated by informalities and defects. 2 G. & H. p. 333, sec. 790; *Ward* v. *Buell*, 18 Ind. 104.

The point is made that there was not a sufficient complaint in the attachment suit before the justice. Though this point became and remains *res adjudicata*, by the judgment of the

Dunn *v.* Crocker.

justice, unappealed from or otherwise vacated, still it may be stated that it has always been the law that in attachment and replevin suits the affidavit might contain the requisites both of a complaint and an affidavit. *Harlow* v. *Becktle,* 1 Blackf., 2d ed., 237; *Andre* v. *Johnson,* 6 *id.* 188; *Erwin* v. *Shaw, id.* 287.

We come now to the question, what was necessary, in suing on the written undertaking, to be shown in the complaint? The suit is founded on that written undertaking. It was executed under a statute. Hence, it was necessary to set out the written undertaking, and show that a case arose in which it might be taken. But in averring the facts showing that case, it might not be necessary to set out written instruments or copies of them, because the statute only requires this, in all cases, as to instruments which are the foundation of the action. Hence, by the general rule, that statutes in derogation of the common law, are to be strictly construed; pleadings, where the statute has not prescribed differently, may be as at common law. In this case the averments, outside of the judgment of the Court in the attachment suit, were sufficient to show a proper case for the execution of the written undertaking. But it was probably unnecessary to have gone behind that. *Macy* v. *Titcomb,* 19 Ind. 135. See *Byers* v. *The State, &c.,* 20 Ind. 47. See note b, 2 G. & H. 143.

We see no substantial ground on which the judgment can be reversed.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages, and costs.

*W. A. Bickle* and *C. H. Burchenal,* for the appellant.

*Geo. Holland* and *H. B. Payne,* for the appellees.