GASS ET AL. *v.* WILLIAMS ET AL.

ATTACHMENT.—*Delivery Bond.*—*Lien.*—The giving of a delivery bond in an attachment suit does not discharge the lien of the attachment.

SAME.—*Judgment in Attachment.*—A judgment against an attachment defendant, upon which an execution may issue on which the sheriff will be entitled to demand the goods specified in a delivery bond, must be a judgment in attachment.

SAME.—*Attachment Dissolved.*—*Delivery Bond.*—Where an attachment is dissolved, all the proceedings in attachment are quashed and become of no effect, and a delivery bond in such case falls with the writ on which it is based.

From the Marion Common Pleas.

*E. T. Johnson,* for appellants.

*B. Harrison* and *C. C. Hines,* for appellees.

BUSKIRK, J.—But one error is complained of in this action, and that is, that the court below erred in sustaining a demurrer to the substituted complaint.

The facts necessary to a proper understanding of the question involved are these:

On the 30th day of January, 1868, the appellants commenced an action against the Indianapolis Machine Brick Company, in the Marion Circuit Court, for the recovery of a debt.

At the time of filing the complaint, the appellants also obtained a writ of attachment, which the sheriff levied on certain personal property belonging to said company, and which was valued at four hundred and eighty dollars.

The defendant gave a delivery bond under section 168 of the code, 2 G. & H. 143, with Benjamin H. Williams and Tompkins A. Lewis sureties, and thereupon the property attached was returned by the sheriff to the defendant.

Afterward, the appellants obtained a personal judgment against the said company for three hundred and nine dollars and fifty-two cents. The attachment failed. No order for the sale of the attached property was made. The personal judgment remains unpaid. This action is based upon such delivery bond. The complaint, after reciting the foregoing

facts, alleges that an execution was issued upon said judgment and placed in the hands of the sheriff, who demanded of the appellees the attached property, and that they failed to deliver the same. The remedy sought was a recovery upon the bond for the appraised value of the attached property. The court below sustained a demurrer to the complaint. The appellants stood upon their complaint, and final judgment was rendered for the appellees.

The question presented by the record for our decision is new and important. There is no adjudged case in this court directly in point, though the case of *Dunn* v. *Crocker*, 22 Ind. 324, has an important bearing upon the construction which should be placed upon sections 168 and 172 of the code. The question presented by the demurrer to the complaint is : Can an action be maintained upon a delivery bond given under section 168 of the code, where upon final hearing only a personal judgment is rendered, and the attachment is dissolved ?

The affirmative of the above proposition is attempted to be maintained by counsel for appellants. His brief contains a careful and elaborate analysis of section 168. The conditions of the bond are considered separately :

" 1. The property shall be properly kept, and taken care of.

" 2. It shall be delivered to the sheriff on demand, or so much as may be required.

" 3. That it shall be sold upon execution to satisfy any judgment which may be recovered against him in the action.

" 4. That if he fails to deliver the property to the sheriff on demand, he will pay the appraised value of the property not exceeding the amount of the judgment and costs."

It is further argued, that in proceedings in attachment the statute contemplates two judgments, one *in personam* and the other *in rem*. The one being a personal judgment against the defendant, and the other affecting the attached property. The strong point of the argument is founded upon the words, to satisfy " any judgment " which may be recovered in the

action. It is earnestly contended that the phrase "any judgment" was intended to, and does, embrace a personal judgment against the defendant, as well as a judgment *in rem.* In other words, that a plaintiff in a proceeding in attachment acquires a specific lien upon the attached property, and that it must be surrendered to the sheriff and sold to satisfy a personal judgment rendered against the defendant, although there may have been no cause for the attachment, and it was dissolved by the order of the court.

Counsel for appellees, in a very carefully prepared brief, assume the following positions :

" 1. That the giving of a delivery bond in the attachment suit does not discharge the lien of the attachment.

" 2. That the judgment recovered against the attachment defendant in the action, upon an execution on which the sheriff is entitled to demand the goods specified in the delivery bond, must be a judgment in attachment.

" 3. That where the attachment is dissolved, all the proceedings in attachment are quashed, and become of no effect, and the delivery bond falls with the writ on which it was based."

Sections 168 and 172 are as follows :

" Sec. 168. The defendant, or other person having possession of property attached, may have the same, or any part thereof, delivered to him, by executing and delivering to the sheriff a written undertaking, with surety to be approved by the sheriff, payable to the plaintiff, to the effect that such property shall be properly kept and taken care of, and shall be delivered to the sheriff on demand, or so much thereof as may be required to be sold on execution to satisfy any judgment which may be recovered against him in the action, or that he will pay the appraised value of the property, not exceeding the amount of the judgment and costs.

" Sec. 172. If the defendant, or other person in his behalf, at any time before judgment, shall execute a written undertaking to the plaintiff, with sufficient surety, to be approved by the court, clerk, or sheriff, to the effect that the defend-

ant will appear to the action, and will perform the judgment of the court, the attachment shall be discharged and restitution made of any property taken under it, or the proceeds thereof."

This court in *Dunn* v. *Crocker, supra,* in speaking of section 168, says: "The first of these two sections provides for an undertaking in the nature of a delivery bond, which does not release the property from the attachment, nor from an order of sale in the judgment."

The same learned judge, in speaking of section 172, on page 327, uses this language: "Under that section the written undertaking is a substituted security for the property, and where the attachment proceedings are sustained and judgment is rendered against the defendant, no order is made for the sale of the property, it having been released, but a suit on the undertaking is resorted to instead of the property. It is like the attachment proceedings against water craft."

A legislative construction of section 172 is contained in section 188, which is as follows :

"Sec. 188. Any defendant against whom an order of attachment has been issued may, after appearing to the action, move to have the attachment discharged and restitution awarded of any property taken under it; but an appearance to the action shall not operate to discharge the attachment, unless a written undertaking be filed as required in section 172. If the defendant appear and judgment be rendered in favor of the plaintiff, and any part thereof remain unsatisfied, after exhausting the property attached, such judgment shall be deemed a judgment against the defendant personally, and shall have the same effect as other judgments, and execution shall issue thereon accordingly, for the collection of such residue. If the plaintiff's undertaking be insufficient, he shall have a reasonable time to file an additional one." 2 G. & H. 148.

It is expressly provided in the above section, that there shall be no discharge of the attachment, unless a written undertaking be filed as required by section 172. By the

above section, it is provided that there shall be a judgment of sale of the attached property, and an execution over as on ordinary judgments for any amount not made by a sale of property. By the above section of the code, and by the practice obtaining here continuously ever since *Harlow* v. *Becktle*, 1 Blackf. 238, there is a special judgment or order of sale of attached property, and special execution. *The State* v. *Manly*, 15 Ind. 8; *Foster* v. *Dryfus*, 16 Ind. 158; *McCollem* v. *White*, 23 Ind. 43; *Perkins* v. *Bragg*, 29 Ind. 507; *Moore* v. *Jackson*, 35 Ind. 360.

The following extract from the brief of counsel for appellees meets with our approval:

"It will be seen that in the case provided for by section 172, the attachment is discharged, restitution of the property is made to the defendant, and thereafter there can be no issue in attachment to be determined. The attachment falls. But there is no such provision made under section 168. The attachment still exists. It becomes a triable issue under proper pleadings. The lien of the writ is not discharged. The court proceeds in the action as if no such bond had been given. The property is in the custody of the law. The bond is not a substituted security for the property. The property is to be returned to the sheriff. The effect of the bond is the same as that of a delivery bond where goods are levied upon under an ordinary execution. In such case no other execution can reach them. The lien of the levy continues. It was so held in *Hagan* v. *Lucas*, 10 Peters, 400. There slaves had been levied on by a sheriff under execution of the state court, and a delivery bond given. Subsequently, under writ from the United States Court, the marshal levied upon the same slaves. The Supreme Court of the United States held that the levy by the marshal could not be sustained, as the property was in the custody of the law, the first levy standing as a lien on the property. The case is, indeed, more than illustrative, and we invite the attention of the court to the report. An Alabama case is

cited in the opinion, of the court, where it was held that the
giving of a bond for the delivery of property under the
attachment laws of that state did not release the goods from
the lien of the attachment.   The principle upon which this
decision is based is recognized in *Jæger* v. *Stœlting*, 30
Ind. 341, where the act of a sheriff in levying upon property
which had been theretofore attached, but taken from the
custody of the sheriff upon a delivery bond, is termed 'unau-
thorized.'   The property was not, by the delivery to the
claimant or defendant, withdrawn from the custody of the
law.   In such case, to use the language of the court in
*Hagan* v. *Lucas, supra*, 'the custody of the claimant is
substituted for the custody of the sheriff,' and 'the property
is as free from the reach of other processes as it would have
been in the hands of the sheriff.'   In Drake on Attachments,
section 331, it is said, upon the authority of the several cases
there cited, that such bonds do not discharge the lien of the
attachment.

"The statutes of Kentucky provide that the sheriff may
deliver the attached property to the person in possession
upon bond that the defendant shall perform the judgment of
the court, or that the property or value shall be forthcoming.
In *Bell* v. *Western, etc., Co.*, 3 Met. Ky. 559, the court say:
'In the one case the lien created by the attachment contin-
ues, and the power of the court subsists and continues as
effectually for all purposes as if no bond had been given, or
possession never passed from the officer.   In the other case
the lien is extinguished.'

"The provisions of the two sections of our statute are
substantially the same as those of the Kentucky statute
referred to, and the difference in the provisions of the two
sections is accurately stated by the Kentucky Court of
Appeals.   This view receives further strength by the rulings
of our own Supreme Court on the old water-craft-attach-
ment law of 1838 and 1843, which held that where the pre-
scribed bonds were given, the property was discharged, and

the judgment personal against the claimant. *Lane* v. *Leet,* 2 Ind. 535."

The case of *Hardcastle* v. *Hickman,* 26 Missouri, 475, fully supports the second proposition laid down by counsel for appellees. There goods were attached and claimed by H. & F., and bond given to repossess the same, conditioned: Now if said obligees should fail to sustain their said suit so commenced by attachment as aforesaid, and obtain judgment against H. & F., as garnishees of M. & J. (who were the attachment defendants), and H. & F. shall, within thirty days, pay the amount of such judgment to obligees, this obligation to be void. It is understood that by judgment is meant final judgment, and that H. & F. will, in fulfilment of this obligation, pay any judgment which may be rendered in the attachment suit against M. & J. or H. & F. as garnishees. The court say: "The judgment spoken of in the bond, which was to fix the liability of the defendant, is a judgment in the suit by attachment—a judgment which would reach the property attached;" and it is expressly held, that where a judgment is spoken of as obtained in an attachment suit, it is clearly meant a judgment against the property in dispute, and not a general judgment in which the sureties could have no concern. The court adds: "Such a construction (as contended for) would make a party (surety) responsible for the debts altogether independent of the attachment." The same remark would apply in the case at bar.

Counsel for appellants refers us to the following authorities as supporting his views: *Young* v. *Campbell,* 5 Gilman, 80; *Love* v. *Voorhies,* 13 La. An. 549; *Guay* v. *Andrews,* 8 La. An. 141; *Waynant* v. *Dodson,* 12 Iowa, 22.

The case of *Young* v. *Campbell,* 5 Gilman, 80, cited by appellants, when viewed in connection with the statute and the practice in Illinois, upon which it was based, does not sustain the appellants' position. The practice in that and our own State is not similar. There a judgment *in personam* is sufficient, if there has been personal service. No order of

sale of attached property is necessary. Nor are we informed in that case whether the attachment was maintained, or even contested. The case seems too meagre for an authority, and if an authority, is one only upon the question of practice in that State.

The case of *Love* v. *Voorhies*, 13 La. An. 549, cited by plaintiffs, to which we shall again refer upon another point, is expressly where property is released, and the case is clearly put upon that ground. The lien was gone. The measure of liability might well be the value of the attached property, and the bond held good, as under section 172 of our code. The Louisiana code, article 259, provides that the defendant, if he appear, may at any stage of the suit have the attached property released by delivering to the sheriff his obligation, etc., with surety, etc., that he will satisfy such judgment to the value of the property attached, as may be rendered against him in the suit pending.

In the above case there was personal judgment, an order of sale of attached property, execution and return of *nulla bona*. But the opinion of the court, adopting as its own the opinion prepared by the able judge then retired, says: "The case might be different if the attachment had been quashed by judicial order," citing *Pailhes* v. *Roux*, 14 La. 83, where the court say that this became necessary in order to relieve the party and his surety from the obligation resulting from the bond given to the sheriff, to regain possession of property attached. Is it not a legitimate inference from this language that a quashing or dissolution of the attachment relieves from the obligation of the bond?

The case cited from 8 La. An. 141, was under the same statute as above quoted, and is subject to the same criticism.

In *Waynant* v. *Dodson*, 12 Iowa, 22, cited at length by appellants, the decision was based upon a statute which provides for the discharge of the property. The case, in the light of the statute which we quote, cannot be considered as favoring the position of appellants. Section 3219, p. 591, Iowa Statutes (1860), is as follows:

" The defendant * * may, at any time before judgment, discharge the property attached, or any part thereof, by giving bond with security, * * conditioned that such property, or its estimated value, shall be delivered to the sheriff to satisfy any judgment which may be obtained against the defendant in that suit, within twenty days after the rendition thereof."

In our opinion, the three propositions laid down by counsel for appellees are fully supported by reason, and sustained by the authorities.

The consequences likely to result from the construction contended for by counsel for appellants are well stated in the following extract from the brief of counsel for appellees:

" And, upon principle, it seems evident that when the attachment is dismissed, or dissolved, or quashed, all its incidents fall with it. Does the lien of the writ continue when the writ is quashed ? Would the officer have a right to hold attached property, after the dissolution of the attachment ? If so, by what authority is it held ? If he refused to deliver to the attachment defendant, could not the defendant maintain his suit against the officer for possession ? Suppose a plaintiff procures a writ of attachment upon an affidavit of non-residence which is utterly untrue, and so known by the plaintiff at the time. The debtor's goods are levied on, and he gives a bond for their delivery to him. As soon as the bond is given, the plaintiff dismisses the attachment proceeding, but prosecutes his claim to final personal judgment. Is the attachment lien upon the goods to stand, and has the sheriff a right upon a general execution to demand them, and, delivery failing, can the plaintiff hold the bond procured by his intentional false swearing? The honest creditor must lose his debt, for, as shown under the head of our first proposition, his execution as against the lien of the attachment cannot have any force. We do not think the law was intended to aid false swearers, and give them advantages over honest creditors."

In our opinion, the court committed no error in sustaining the demurrer to the complaint.

The judgment is affirmed, with costs.